FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 31, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

RYAN N.,[1]

          Plaintiff,

   vs.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

No. 2:20-cv-00177-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 17, 20

     Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 20. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 17, and grants Defendant's motion, ECF No. 20.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

1  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

2  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

3  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

4  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

5  *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

6  decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

7  *Sanders*, 556 U.S. 396, 409-10 (2009).

8  **FIVE-STEP EVALUATION PROCESS**

9  A claimant must satisfy two conditions to be considered "disabled" within

10  the meaning of the Social Security Act.  First, the claimant must be "unable to

11  engage in any substantial gainful activity by reason of any medically determinable

12  physical or mental impairment which can be expected to result in death or which

13  has lasted or can be expected to last for a continuous period of not less than twelve

14  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

15  "of such severity that he is not only unable to do his previous work[,] but cannot,

16  considering his age, education, and work experience, engage in any other kind of

17  substantial gainful work which exists in the national economy."  42 U.S.C. §

18  1382c(a)(3)(B).

19  The Commissioner has established a five-step sequential analysis to

20  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 28, 2016, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of January 3, 2013.[2]  Tr. 15, 76, 165-70.  The application was denied initially, and on reconsideration. Tr. 94-102, 106-08.  Plaintiff appeared before an administrative law judge (ALJ) on November 5, 2018.  Tr. 34-62.  On February 22, 2019, the ALJ denied Plaintiff's claim.  Tr. 12-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 28, 2016.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: obstructive sleep apnea, obesity, bipolar disorder, and personality disorder.  *Id.*

_____

[2] At the hearing, Plaintiff amended his alleged onset date to October 19, 2016, Tr. 60, however the ALJ's decision does not reflect the amended date.

ORDER - 6

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 18.  The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following limitations:

> [Plaintiff] can frequently climb ladders, ropes, and scaffolds, kneel, and crawl.  He has no other postural limitations.  He must avoid concentrated exposure to pulmonary irritants (such as fumes, odors, dust, and gases), and workplace hazards (such as moving machinery and unprotected heights).  He is limited to work that requires him to perform simple repetitive tasks, have [casual], superficial contact with [the] general public but not as part of the job tasks.  He is likely to be off-task but less than 10% of a workday.

Tr. 21.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 27.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as automobile detailer, kitchen helper, and laboratory equipment cleaner.  Tr. 28.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  *Id.*

On March 23, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  Plaintiff raises the following issues for review:

      1.  Whether the ALJ conducted a proper step-three analysis;

      2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

      3.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 2.

**DISCUSSION**

**A. Step-Three Analysis**

Plaintiff contends the ALJ erred by failing to find Plaintiff met or equaled

Listing 3.02C.  ECF No. 17 at 3-4, ECF No. 21 at 2-5.  At step three, the ALJ must

determine if a claimant's impairments meet or equal a listed impairment.  20

C.F.R. § 416.920(a)(4)(iii).  The Listing of Impairments "describes each of the

major body systems impairments [which are considered] severe enough to prevent

an individual from doing any gainful activity, regardless of his or her age,

education or work experience."  20 C.F.R. § 416.925.  "Listed impairments are

purposefully set at a high level of severity because 'the listings were designed to

operate as a presumption of disability that makes further inquiry unnecessary.' "

*Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*,

493 U.S. 521, 532 (1990)).  "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered."  *Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim."  *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ."  *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment."  *Tackett*, 180 F.3d at 1099.  However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found Plaintiff's impairments did not meet or equal a listing, including Listing 3.02. Tr. 18-21. Listing 3.02C(3) is met if the claimant has a chronic respiratory disorder, besides cystic fibrosis, that causes chronic impairment of gas exchange demonstrated by $SpO_2$ measured by pulse oximetry either at rest, during a 6MWT, or after a 6MWT, less than or equal to 87 percent when the test site altitude is less than 3000 feet. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 3.02C(3). Listing 3.00H(2) sets forth the requirements for the pulse oximetry; the test must be performed when the claimant is medically stable, the claimant must not be on supplemental oxygen, the pulse oximetry measurement must be stable, the report must include the required data including a graphical chart, and if there is more than one measurement, the lowest $SpO_2$ measurement is used. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 3.00H(2).

ORDER - 10

1        The ALJ found Plaintiff did not meet Listing 3.02 because his pulmonary

2   function test, DLCO and/or ABG test results did not meet the Listing requirements

3   for Listing 3.02A, 3.02B, or 3.02C, and he did not meet the

4   exacerbation/complication requirements for 3.02D.  Tr. 18.  The ALJ did not

5   address whether Plaintiff's SpO2 test results met Listing 3.02C(3).  Plaintiff

6   contends he meets the requirements of Listing 3.02C(3) because his SpO2 results

7   were 82 percent in February 2017, during a test taken at an elevation less than

8   3000 feet, and his SpO2 in April 2017 was 86 percent.  ECF No. 17 at 4 (citing Tr.

9   430, 434).  Defendant argues Plaintiff failed to meet his burden in demonstrating

10  he meets Listing 3.02C(3), as the medical records do not contain a graphical

11  printout of Plaintiff's SpO2 value, nor a concurrent, acceptable pulse wave.  ECF

12  No. 20 at 5.  Defendant also argues Plaintiff has not demonstrated he meets Listing

13  3.02C(3), because the Listing requires the pulse oximetry measurement must be

14  stable, and Plaintiff's values varied too drastically.  *Id.* at 5-6.  In reply, Plaintiff

15  argues there is sufficient evidence to satisfy the requirements for the Listing, but

16  does not point to a graphical printout, as required by the Listing.  ECF No. 21 at 2.

17  Plaintiff further argues Defendant failed to address whether Plaintiff equals Listing

18  3.02C(3), ECF No. 21 at 2, however, Plaintiff failed to present any argument or

19  evidence that he equals the listing.

20

ORDER - 11

1    Listing 3.02C(3) can only be met if each component of the listing is met,

2    including the requirement that the pulse oximetry report contain a graphical

3    printout, however the record does not contain this required evidence. *See* 20

4    C.F.R. Pt. 404, Subpt. P., App. 1, Listing 3.00H(2)(e)(ii).  As such, Plaintiff has

5    not met his burden in demonstrating he meets the listing.  Further, while Plaintiff

6    argues he equals the listing, he has not presented an argument nor evidence as to

7    how he equals the listing.  Plaintiff is not entitled to remand on these grounds.

8    **B. Plaintiff's Symptom Claims**

9    Plaintiff faults the ALJ for failing to rely on reasons that were clear and

10    convincing in discrediting his symptom claims.  ECF No. 17 at 4-17.  An ALJ

11    engages in a two-step analysis to determine whether to discount a claimant's

12    testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

13    "First, the ALJ must determine whether there is objective medical evidence of an

14    underlying impairment which could reasonably be expected to produce the pain or

15    other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

16    "The claimant is not required to show that [the claimant's] impairment could

17    reasonably be expected to cause the severity of the symptom [the claimant] has

18

19

20

ORDER - 12

1  alleged; [the claimant] need only show that it could reasonably have caused some

2  degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

3      Second, "[i]f the claimant meets the first test and there is no evidence of

4  malingering, the ALJ can only reject the claimant's testimony about the severity of

5  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

6  rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

7  omitted).  General findings are insufficient; rather, the ALJ must identify what

8  symptom claims are being discounted and what evidence undermines these claims.

9  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

10 *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

11 explain why it discounted claimant's symptom claims)).  "The clear and

12 convincing [evidence] standard is the most demanding required in Social Security

13 cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v.*

14 *Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

15     Factors to be considered in evaluating the intensity, persistence, and limiting

16 effects of a claimant's symptoms include: 1) daily activities; 2) the location,

17 duration, frequency, and intensity of pain or other symptoms; 3) factors that

18 precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

19 side effects of any medication an individual takes or has taken to alleviate pain or

20 other symptoms; 5) treatment, other than medication, an individual receives or has

ORDER - 13

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 21.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims are inconsistent with the objective medical evidence.  Tr. 21-23.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680. However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in

ORDER - 14

1  determining the severity of a claimant's symptoms and their disabling effects.

2  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

3        Regarding Plaintiff's physical conditions, the ALJ found Plaintiff's

4  allegations of disabling physical limitations are inconsistent with the objective

5  evidence.  Tr. 22.  The ALJ noted the records do not demonstrate significant

6  complications due to Plaintiff's obstructive sleep apnea nor obesity.  *Id.*  The

7  medical records reflect Plaintiff's apnea symptoms and nocturnal symptoms

8  resolved with optimal CPAP settings, his chest imaging was normal, Plaintiff was

9  often alert and awake at appointments, and a provider noted Plaintiff was doing

10 well on his current treatment, and another noted Plaintiff's excessive daytime

11 sleepiness resolved with his use of a CPAP.  *Id.* (citing Tr. 429, 434, 436, 449,

12 587-88).  Plaintiff reported to his providers that he was sleeping well, and having

13 improvement in his symptoms with a CPAP.  Tr. 22 (citing Tr. 422, 585).  Plaintiff

14 generally had normal respiratory and cardiac function on examination.  Tr. 22

15 (citing, e.g., Tr. 421, 424, 428-29).  Plaintiff also generally had normal

16 musculoskeletal function, including normal range of motion, gait, strength,

17 sensation, and reflexes.  Tr. 22 (citing, e.g., Tr. 432, 436, 442-43).

18       Plaintiff argues the objective evidence is consistent with his symptom

19 claims, as his symptoms are listing-level severity, and the records demonstrate

20 impaired sleep and continued symptoms with treatment.  ECF No. 17 at 5-8.

ORDER - 15

However, as discussed *supra,* Plaintiff has not met his burden in demonstrating he meets or equals a listing. While Plaintiff offers an alternative interpretation of the evidence, the ALJ's findings are supported by substantial evidence.

Regarding Plaintiff's mental health conditions, the ALJ found the objective evidence is inconsistent with Plaintiff's symptom claims. Tr. 23-24. The ALJ found Plaintiff had improvement in his symptoms with treatment, as he reported improvement, and he was observed as happy, making good progress, and was noted as stable. *Id.* (citing Tr. 202, 206, 208, 421, 462, 480, 497, 562). While he had abnormalities on some examinations, Plaintiff's providers often found he was cooperative, friendly, pleasant, calm, talkative, polite, and appropriate, with normal eye contact, hygiene, and grooming. Tr. 24 (citing, e.g., Tr. 337, 442, 470-74). During periods of reported remission from methamphetamine, and compliance with treatment, Plaintiff generally had normal orientation, thoughts, speech, insight/judgment, memory, and concentration. Tr. 24 (citing, e.g., Tr. 337-38, 432, 472-74).

Plaintiff argues he had continued symptoms throughout the relevant period, including diminished eye contact, impaired conversations, abnormal thoughts, and other abnormalities on examination. ECF No. 17 at 13-14. Plaintiff offers an alternative interpretation of the evidence, however the ALJ's finding is supported by substantial evidence.

While Plaintiff's symptoms naturally waxed and waned, the ALJ's finding that the objective findings were out of proportion with and did not corroborate Plaintiff's report of severe physical and mental limitations is reasonable. This was a clear and convincing reason, along with the other reasons offered, to discount Plaintiff's symptom reports.

### 2. *Improvement with Treatment*

The ALJ found Plaintiff's improvement with treatment was inconsistent with his symptom claims. Tr. 22-24. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (determining that conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

As discussed *supra,* the ALJ found Plaintiff had improvement in both his physical and mental health symptoms with treatment. Tr. 22-24. Plaintiff's obstructive sleep apnea improved with CPAP use, and Plaintiff reported sleeping better and feeling rested. Tr. 22. The medical records demonstrate his providers observed improvement in Plaintiff's mental health symptoms with treatment, and

Plaintiff reported improvement with medication.  Tr. 23-24.  Plaintiff argues he did

not have sustained improvement with treatment, and argues the ALJ failed to

identify any periods when he was non-compliant with treatment nor when he had

improvement with sobriety.  ECF No. 17 at 9-10.  However, Plaintiff does not

point to any periods when he had disabling symptoms despite being compliant with

treatment and being free from substances.  Plaintiff notes the ALJ's finding that

Plaintiff never had a period of sobriety, and does not dispute this finding.  *Id.* at 9,

Tr. 23.

On this record, the ALJ reasonably concluded that Plaintiff's impairments

when treated were not as limiting as Plaintiff claimed. This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's

symptoms complaints.

### 3. *Activities of Daily Living*

The ALJ found Plaintiff's activities of daily were inconsistent with his

symptom claims.  Tr. 19, 23.  The ALJ may consider a claimant's activities that

undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a

substantial part of the day engaged in pursuits involving the performance of

exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*,

674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to

ORDER - 18

be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

While Plaintiff alleges that he avoids people, does not have any friends, and does not do much with his family, Plaintiff reported going to AA meetings and appointments, watching movies with family members, going to stores, looking for work, doing chores with his mother, going to parks and trails, visiting restaurants, going places alone, and has reported engaging in social activities two times per week, and walking his dog multiple times per day.  Tr. 19 (citing, e.g., Tr. 197-201, 222-23, 225-27, 333-34, 580).  He also reported playing basketball, video games, and board games with his family members, swimming, fishing, doing yardwork, and watching television.  Tr. 20 (citing, e.g., Tr. 554, 575, 577, 579).  Plaintiff reported that going for walks and playing basketball helped him control his symptoms, and he expressed interest in pursuing his GED.  Tr. 23 (citing Tr. 546).

Plaintiff argues the ALJ failed to specify that Plaintiff's activities of daily living are inconsistent with Plaintiff's symptom claims, and that the activities are not inconsistent with his claims.  ECF No. 17 at 12.  However, the ALJ pointed to multiple activities discussed *supra* that are inconsistent with Plaintiff's claims of

disabling limitations.  On this record, the ALJ reasonably concluded that Plaintiff's activities of daily living are inconsistent with Plaintiff's symptom claims.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptoms complaints.

### 4.  Work History

The ALJ found Plaintiff's work history was inconsistent with his claims.  Tr. 24.  An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the claimant's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  The ALJ noted Plaintiff was terminated from his last job due to insubordination rather than his disability.  Tr. 24, 496.  The ALJ also noted Plaintiff reported a history of 26 arrests and a period of incarceration, which the ALJ found would limit Plaintiff's ability to obtain employment.  Tr. 24-25, 334.  Plaintiff argues he stopped working due to issues with his coworkers caused by his paranoia, and argues he obtained work despite his history of arrests, indicating his criminal record was not the cause of his inability to work.  ECF No. 17 at 14-15.  Any error in the ALJ's analysis would be harmless as the ALJ gave other supported reasons to reject Plaintiff's symptom claims. *See Molina,* 674 F.3d at 1115.  Plaintiff is not entitled to remand on these grounds.

ORDER - 20

1    **C. Medical Opinion Evidence**

2        Plaintiff contends the ALJ erred in considering the opinion of Thomas

3    Genthe, Ph.D., and Natalie Christopherson, B.S.  ECF No. 17 at 17-21.

4        There are three types of physicians: "(1) those who treat the claimant

5    (treating physicians); (2) those who examine but do not treat the claimant

6    (examining physicians); and (3) those who neither examine nor treat the claimant

7    [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

8    *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

9    Generally, a treating physician's opinion carries more weight than an examining

10   physician's, and an examining physician's opinion carries more weight than a

11   reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

12   to opinions that are explained than to those that are not, and to the opinions of

13   specialists concerning matters relating to their specialty over that of

14   nonspecialists."  *Id*. (citations omitted).

15       If a treating or examining physician's opinion is uncontradicted, the ALJ

16   may reject it only by offering "clear and convincing reasons that are supported by

17   substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

18   "However, the ALJ need not accept the opinion of any physician, including a

19   treating physician, if that opinion is brief, conclusory and inadequately supported

20   by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 416.913 (2013).[3]  However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. § 416.913(d) (2013).[4]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

---

[3] The regulation that defines acceptable medical sources is found at 20 C.F.R. § 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

[4] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. § 416.920c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 22

1    *1.  Dr. Genthe*

2    On October 19, 2016, Dr. Genthe performed a psychological examination.

3    Tr. 332-39.  Dr. Genthe diagnosed Plaintiff with schizoaffective disorder,

4    depressive type; intermittent explosive disorder; other specified personality

5    disorder (with borderline and schizotypal features); mild cannabis use disorder;

6    alcohol use disorder in early remission; and stimulant (methamphetamines) use

7    disorder in early remission.  Tr. 335.  Dr. Genthe opined that Plaintiff has moderate

8    limitations in his ability to understand, remember, and persist in tasks by following

9    very short and simple instructions, perform activities within a schedule, maintain

10   regular attendance and be punctual within customary tolerances without special

11   supervision, learn new tasks, perform routine tasks without special supervision,

12   make simple work-related decisions, be aware of normal hazards and take

13   appropriate precautions, and set realistic goals and plan independently; marked

14   limitations in his ability to understand, remember, and persist in tasks by following

15   detailed instructions, adapt to changes in a routine work setting, and ask simple

16   questions or request assistance; and severe limitations in his ability to

17   communicate and perform effectively in a work setting, maintain appropriate

18   behavior in a work setting, and complete a normal workday/workweek without

19   interruptions from psychologically based symptoms.  Tr. 335.  Dr. Genthe opined

20   Plaintiff overall has a severe rating.  *Id.*  Dr. Genthe further opined Plaintiff's

1   impairments are not primarily the result of substance use in the prior 60 days, the

2   limitations were expected to last 12 months, and a protective payee is

3   recommended for management of any funds. Tr. 336. The ALJ gave Dr. Genthe's

4   opinion minimal weight. Tr. 26. As Dr. Genthe's opinion is contradicted by the

5   opinions of Dr. Moore and Dr. Regets, Tr. 71-73, 88-90, the ALJ was required to

6   give specific and legitimate reasons, supported by substantial evidence, to reject

7   Dr. Genthe's opinion. *See Bayliss*, 427 F.3d at 1216.

8        First, the ALJ gave more weight to the State agency opinions than he gave to

9   Dr. Genthe's opinion. Tr. 26. Generally, an ALJ should accord more weight to the

10  opinion of an examining physician than to that of a non-examining physician. *See*

11  *Andrews*, 53 F.3d at 1040-41. However, the opinion of a nonexamining physician

12  may serve as substantial evidence if it is "supported by other evidence in the record

13  and [is] consistent with it." *Id*. at 1041. The ALJ gave significant weight to the

14  portion of the State agency consultant's opinions that Plaintiff can perform simple

15  repetitive tasks, can maintain concentration, persistence and pace for full-time

16  work with occasional interference due to symptoms and possible motivation issues,

17  and that he would do best with superficial contact away from the general public

18  and with casual contacts with others. Tr. 25. The ALJ found this portion of the

19  opinions was consistent with the medical record, Plaintiff's improvement with

20  treatment, and his daily activities. Tr. 25-26. The ALJ gave less weight to the

ORDER - 24

1    State agency opinions that Plaintiff can perform tasks with some cognitive

2    complexity.  Tr. 26.  At the initial and reconsideration levels, the analyses of the

3    evidence noted Plaintiff had increased symptoms during a period he reported

4    recent drug use, he had improvement with medication, and Dr. Genthe noted he

5    suspected Plaintiff was engaging in impression management, and symptom

6    exaggeration was considered.  Tr. 66-67, 83-84, 336.  The ALJ cited to numerous

7    medical records that are consistent with the State agency opinions.  As such, the

8    ALJ did not error in giving more weight to reviewing opinions over an examining

9    opinion.

10        Second, the ALJ found Dr. Genthe's opinion was not consistent with his

11   own examination, nor other medical records.  Tr. 26.  A medical opinion may be

12   rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228; *Batson v.*

13   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278

14   F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v.*

15   *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Furthermore, a physician's opinion

16   may be rejected if it is unsupported by the physician's treatment notes.  *Connett v.*

17   *Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  The ALJ found Dr. Genthe's opinion

18   was inconsistent with Plaintiff's presentation during Dr. Genthe's examination.  Tr.

19   26 (citing Tr. 337).  Dr. Genthe noted Plaintiff was well-groomed with good

20   hygiene, he had normal speech and answers, he was cooperative and friendly, with

ORDER - 25

a euthymic mood, he had normal thoughts, he had a fair understanding of his own

difficulties, and he was able to recall four out of four items after a delay.  Tr. 337.

Plaintiff was able to spell "world" correctly forward and backward, though he

incorrectly calculated a math calculation, and he had some limitations in his

insight/judgment.  Tr. 338.  While Plaintiff points to some abnormalities in the

examination, ECF No. 17 at 19, the generally normal examination is inconsistent

with the marked and severe limitations contained in Dr. Genthe's opinion.

The ALJ also found Dr. Genthe's opinion was inconsistent with Plaintiff's

presentation at other appointments.  Tr. 26.  The ALJ noted Plaintiff's mental

symptoms are generally well-controlled or stable when he is compliant with

treatment, and on numerous occasions, Plaintiff was observed as happy, smiling,

laughing, cooperative, pleasant, calm, appropriate, talkative, polite, alert, oriented,

and with normal thoughts, speech, memory, concentration, insight, and judgment.

Tr. 23-24.  Plaintiff had good progress in treatment, and reported improvement in

his symptoms.  Tr. 23 (citing, e.g., Tr. 540,548, 571, 580).  Plaintiff argues the

objective evidence contains multiple abnormalities at appointments, which

supports Dr. Genthe's opinion.  ECF No. 17 at 13-14, 20.  However, Plaintiff cites

to many medical records from the time period prior to Plaintiff beginning

medication to manage his symptoms.  *See, e.g., id.* at 10 (citing Tr. 349, 350, 380,

386) (all four records are from appointments in 2016, before Plaintiff began

medication).  Plaintiff also cites to several records where only one or two abnormalities were noted, but the examination was otherwise normal.  *See, e.g.,* ECF No. 17 at 10 (citing Tr. 540) (at the appointment, Plaintiff had impaired eye contact, but otherwise reported improvement, had a generally normal examination, and wanted to pursue his GED).  Plaintiff argues that even if he had improvement in his symptoms, the ALJ should have analyzed the records to determine if Plaintiff was disabled during a closed period, but Plaintiff does not point to any 12-month period he should have been found disabled that the ALJ failed to analyze for a potential closed period.  ECF No. 17 at 20.  Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's interpretation of the evidence, which is supported by substantial evidence.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).

The ALJ also noted that Dr. Genthe rendered his opinion prior to the alleged onset date, and the opinion does not reflect Plaintiff's functioning during the relevant period.  Tr. 26.  Plaintiff argues the opinion is relevant because it was rendered after the original alleged onset date, as Plaintiff amended his onset date to a later date.  ECF No. 17 at 20.  However, the ALJ did not reject the opinion because it was rendered prior to the amended alleged onset date, but rather found

ORDER - 27

the opinion is inconsistent with Plaintiff's functioning during the relevant period, which is supported by substantial evidence for the reasons discussed herein.

Third, the ALJ found Dr. Genthe's opinion was inconsistent with Plaintiff's activities of daily living. Tr. 26. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Plaintiff reported socializing more, playing basketball, and expressed interest in pursuing his GED. Tr. 23 (citing Tr. 544, 546). He also reported cooking simple meals, walking places, shopping in stores, visiting parks, walking his dog several times per day, swimming, fishing, and handling housework and yard work. Tr. 25 (citing, e.g., Tr. 196-98, 222, 226-27). While Plaintiff argues the ALJ did not specify how the activities contradicts Dr. Genthe's opinion, ECF No. 17 at 20, the ALJ's citation to numerous activities Plaintiff reported engaging in demonstrates inconsistencies with Dr. Genthe's extreme limitations. This was a specific and legitimate reason, supported by substantial evidence, to reject Dr. Genthe's opinion.

2. *Ms. Christopherson*

On February 6, 2018, Ms. Christopherson, Plaintiff's mental health case manager, rendered an opinion on Plaintiff's functioning. Tr. 524-27. Ms. Christopherson opined Plaintiff has mild limitations in his ability to carry out very short, simple instructions, ask simple questions or request assistance, and be aware

of normal hazards and take appropriate precautions; moderate limitations in his

ability to remember locations and work-like procedures, perform activities within a

schedule, maintain regular attendance, and be punctual within customary

tolerances, interact appropriately with the general public, travel in unfamiliar

places or use public transportation, and set realistic goals or make plans

independently of others; marked limitations in his ability to understand and

remember very short and simple instructions and detailed instructions, carry out

detailed instructions, maintain attention and concentration for extended periods,

sustain an ordinary routine without special supervision, make simple work-related

decisions, complete a normal workday/workweek without interruptions from

psychological symptoms and perform at a consistent pace without an unreasonable

number/length of rest periods, accept instructions and respond appropriately to

criticism from supervisors, get along with coworkers/peers without distracting

them or exhibiting behavioral extremes, maintain socially appropriate behaviors

and adhere to basic standards of neatness/cleanliness, and respond appropriately to

changes in the work setting, and severe limitations in his ability to work in

coordination with or proximity to others without being distracted by them.  Tr.

524-26.  Regarding the "B" criteria, Ms. Christopherson opined Plaintiff has

moderate limitations in interacting with others, and marked limitations in

understanding, remembering, or applying information, concentrating, persisting, or

ORDER - 29

maintaining pace, and adapting or managing oneself. Tr. 526. She opined Plaintiff

meets the "C" criteria of the mental listings, he would be off-task more than 30

percent of the time, and would miss four or more days per month if he worked full-

time. *Id.* The ALJ gave little weight to Ms. Christopherson's opinion. Tr. 26. As

Ms. Christopherson is not an acceptable medical source, the ALJ was required to

give germane reasons to reject the opinion. *See Ghanim*, 763 F.3d at 1161.

First, the ALJ found Ms. Christopherson's opinion lacked much explanation

for the opined limitations. Tr. 26. Relevant factors to evaluating any medical

opinion include the amount of relevant evidence that supports the opinion, the

quality of the explanation provided in the opinion, and the consistency of the

medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028,

1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Therefore,

a medical opinion may be rejected by the ALJ if it inadequately supported by

medical findings. *Bray*, 554 F.3d at 1228. Ms. Christopherson's opinion consists

of checked boxes, and a one sentence explanation that Plaintiff's bipolar disorder

impacts his daily functioning due to the cyclical depression. Tr. 524-27. Plaintiff

does not challenge this reason. This was a germane reason to reject Ms.

Christopherson's opinion.

Second, the ALJ found Ms. Christopherson's opinion was inconsistent with

the longitudinal record. Tr. 26-27. An ALJ may discredit physicians' opinions

ORDER - 30

that are unsupported by the record as a whole. *Batson,* 359 F.3d at 1195. The ALJ

noted Plaintiff was happy, smiling, laughing and oriented at a January 2018

appointment with Ms. Christopherson, he had improvement with treatment, and his

reported activities of daily living that were inconsistent with the opinion. Tr. 27.

As discussed *supra,* the longitudinal record demonstrates Plaintiff had

improvement with treatment, and the record is inconsistent with an opinion that

Plaintiff has multiple marked and severe limitations. This was a germane reason to

reject Ms. Christopherson's opinion. Plaintiff is not entitled to remand on these

grounds.

### CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 20**, is

**GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 31

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 31, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 32